SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

Index No.: 7519/07

Date Purchased: 2/8/07

------------------------------------------------------------------X

MELANIE M. COLON,

Plaintiff(s),

-against-

BERNARDIN GUTIERR BERNABE and
SALEM TRUCK LEASING, INC. and
PIGTAINER INC.,

Defendant(s),

------------------------------------------------------------------X

**SUMMONS**

Plaintiff designates Bronx
County as the place of trial.

The basis of venue is:
Plaintiff's Residence

Plaintiff resides at:
1425 Leland Avenue
Bronx, New York 10460

County of Bronx

## To the above named Defendants:

**You are hereby summoned** to answer the complaint in this action, and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on the Plaintiff's attorney(s) within twenty days after the service of this summons, exclusive of the day of service, where service is made by delivery upon you personally within the state, or, within 30 days after completion of service where service is made in any other manner. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:    BRONX, NY
          February 7, 2007

THOMAS J. LAVIN, ESQ.
THE LAW OFFICE OF THOMAS J. LAVIN
Attorneys for Plaintiff(s)
MELANIE COLON
2980 Bruckner Boulevard
Bronx, NY 10465
(718) 829-7400

Our File No. 02-275

TO:    BERNARDIN GUTIERR BERNABE
       223 Hope Avenue
       Passaic, New Jersey 07055

       SALEM TRUCK LEASING INC.
       191 Cabot Street
       West Babylon, New York 11704

       BERNARDIN GUTIERR BERNABE
       234 President Street, 1st Floor
       Passaic, New Jersey 07055

       SALEM TRUCK LEASING INC.
       9505 Avenue D
       Brooklyn, New York 11236

PIGTAINER INC.
1106 Randall Avenue
Bronx, New York 10474-6216

PIGTAINER INC.
340 S Stiles Street
Linden, New Jersey 07036-4404

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

Index No.: 7519/07
Date Purchased: 2/8/07

------------------------------------------------------------------------X

MELANIE M. COLON,

**VERIFIED COMPLAINT**

       Plaintiff(s),

    -against-

BERNARDIN GUTIERR BERNABE  and
SALEM TRUCK LEASING, INC. and
PIGTAINER INC.,

       Defendant(s),

------------------------------------------------------------------------X

    Plaintiff, by her attorneys, **THE LAW OFFICE OF THOMAS J. LAVIN**, complaining of the Defendants, respectfully alleges, upon information and belief:

    1.    At all times herein mentioned, Plaintiff **MELANIE M. COLON** was, and still is, a resident of the County of Bronx, State of New York.

    2.    At all times herein mentioned, Defendant **SALEM TRUCK LEASING INC.** was, and still is, a domestic business corporation, duly organized and existing under and by virtue of the laws and the State of New York.

    3.    At all times herein mentioned, Defendant **BERNARDIN GUTIERR BERNABE** was, and still is, a resident of the County of Passaic, State of New Jersey.

    4.    At all times herein mentioned, Defendant **SALEM TRUCK LEASING INC.** maintained a principle place of business in the County of Kings, State of New York, more specifically at 9505 Avenue D, Brooklyn, New York.

1.

5.    At all times herein mentioned, Defendant **SALEM TRUCK LEASING INC.** was and still is duly authorized to conduct business in the State of New York.

6.    At all times herein mentioned, Defendant **PIGTAINER INC.** was, and still is , a domestic business corporation, duly organized and existing under and by virtue of the laws and the State of New York.

7.    At all times herein mentioned, Defendant **PIGTAINER INC.** was, and still is duly authorized to do business in the State of New York.

8.    At all times herein mentioned, Defendant **PIGTAINER INC.** maintained a principle place of business in the County of Union, State of New Jersey.

9.    At all times herein mentioned, Defendant **SALEM TRUCK LEASING INC.** was the owner of a 2005 Tractor Trailer vehicle bearing New York State registration number 52512PA.

10.    At all times herein mentioned, Defendant **BERNARDIN GUTIERR BERNABE** operated the aforementioned Tractor Trailer vehicle bearing New York State registration number 52512PA.

11.    At all times herein mentioned, Defendant **BERNARDIN GUTIERR BERNABE** operated the aforementioned Tractor Trailer vehicle bearing license plate number 52512PA, within the scope of his employment with the Defendant **SALEM TRUCK LEASING INC.**

12.    At all times herein mentioned, Defendant **PIGTAINER INC.** maintained a contract with Defendant **SALEM TRUCK LEASING INC.** relating to the aforementioned Tractor Trailer vehicle bearing New York State registration number 52512PA.

13.    At all times herein mentioned, Defendant **PIGTAINER INC**. leased the aforementioned Tractor Trailer vehicle bearing New York State registration number 52512PA from Defendant **SALEM TRUCK LEASING INC.**

14.    At all times herein mentioned, Defendant **BERNARDIN GUTIERR BERNABE** operated the aforementioned Tractor Trailer vehicle with the permission of the owner Defendant **SALEM TRUCK LEASING INC.**

15.    At all times herein mentioned, Defendant **BERNARDIN GUTIERR BERNABE** operated the aforementioned Tractor Trailer vehicle with the permission of the owner Defendant, **PIGTAINER INC.**

16.    At all times herein mentioned, Defendant **BERNARDIN GUTIERR BERNABE** operated the aforementioned Tractor Trailer vehicle with the knowledge of the owner, Defendant **SALEM TRUCK LEASING INC.**

17.    At all times herein mentioned, Defendant **BERNARDIN GUTIERR BERNABE** operated the aforementioned Tractor Trailer vehicle with the knowledge of the owner, Defendant , **PIGTAINER INC**.

18.    At all times herein mentioned, Defendant **BERNARDIN GUTIERR BERNABE** operated the aforementioned Tractor Trailer vehicle with the consent of the owner, Defendant **SALEM TRUCK LEASING INC.**

19.    At all times herein mentioned, Defendant **BERNARDIN GUTIERR BERNABE** operated the aforementioned Tractor Trailer vehicle with the consent of the owner, Defendant, **PIGTAINER INC.**

3

20.    At all times herein mentioned, Defendant **SALEM TRUCK LEASING INC.** maintained the aforementioned Tractor Trailer vehicle.

21.    At all times herein mentioned, Defendant **PIGTAINER INC.** maintained the aforementioned Tractor Trailer vehicle.

22.    At all times herein mentioned, Defendant **BERNARDIN GUTIERR BERNABE** managed the aforementioned Tractor Trailer vehicle.

23.    At all times herein mentioned, Defendant **BERNARDIN GUTIERR BERNABE** controlled the aforementioned Tractor Trailer vehicle.

24.    At all times herein mentioned, Defendant **BERNARDIN GUTIERR BERNABE** operated the aforementioned Tractor Trailer vehicle in the scope of his employment with **PIGTAINER INC.**

25.    At all times herein mentioned, Plaintiff **MELANIE M. COLON** was the owner and operator of a 1992 Toyota  motor vehicle bearing New York State registration number AZT7655.

26.    At all times herein mentioned, the Cross Bronx Expressway and Ellis Avenue entrance ramp, in the County of Bronx, State of New York, were public roadways, streets and/or thoroughfares.

27.    That on September  7, 2006, Defendant **BERNARDIN GUTIERR BERNABE** was operating the Tractor Trailer vehicle owned by **SALEM TRUCK LEASING INC.**, and leased to **PIGTAINER INC.** at the aforementioned location.

28.    That on September  7, 2006, Plaintiff **MELANIE M. COLON** was operating her motor vehicle at the aforementioned location.

4

29.   That on September 7, 2006, at the aforementioned location, the Tractor Trailer vehicle owned by Defendant **SALEM TRUCK LEASING INC.** leased to Defendant **PIGTAINER INC.** and operated by Defendant **BERNARDIN GUTIERR BERNABE** came into contact with the motor vehicle owned and operated by Plaintiff **MELANIE M. COLON.**

30.   That as a result of the aforesaid contact, Plaintiff **MELANIE M. COLON** was injured.

31.   That the aforesaid occurrence was caused wholly and solely by reason of the negligence of the Defendants without any fault or negligence on the part of the Plaintiff contributing thereto.

32.   That Defendants were negligent, careless and reckless in the ownership, operation, management, maintenance, supervision, use and control of the aforesaid vehicle and the Defendants were otherwise negligent, careless and reckless under the circumstances then and there prevailing.

33.   That by reason of the foregoing, Plaintiff **MELANIE M. COLON** sustained severe and permanent personal injuries; and Plaintiff **MELANIE M. COLON** was otherwise damaged.

34.   That Plaintiff **MELANIE M. COLON** sustained serious injuries as defined by §5102(d) of the Insurance Law of the State of New York.

35.   That Plaintiff **MELANIE M. COLON** sustained serious injuries and economic loss greater than basic economic loss as defined by §5104 of the Insurance Law of the State of New York.

36.    That Plaintiff **MELANIE M. COLON** is not seeking to recover any damages for which Plaintiff has been reimbursed by no-fault insurance and/or for which no-fault insurance is obligated to reimburse Plaintiff.  Plaintiff is seeking only to recover those damages not recoverable through no-fault insurance under the facts and circumstances in this action.

37.    That this action falls within one or more of the exceptions set forth in CPLR §1602.

38.    That by reason of the foregoing, Plaintiff **MELANIE M. COLON** has been damaged in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

**WHEREFORE,** Plaintiff **MELANIE M. COLON** demands judgment against the Defendants in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter, and requests full and fair monetary compensation for pain and suffering to be determined by a jury at the time of Trial, together with the cost and disbursements of this action.

Dated:     Bronx, NY
           February 7, 2007

Yours, etc.

THOMAS J. LAVIN, ESQ.
THE LAW OFFICE OF THOMAS J. LAVIN
Attorneys for Plaintiff(s)
MELANIE M. COLON
2980 Bruckner Boulevard
Bronx, NY 10465
(718) 829-7400

Our File No. 02-275

6

INDIVIDUAL VERIFICATION

STATE OF NEW YORK )
COUNTY OF BRONX   ) ss:

That deponent has read the foregoing SUMMONS AND VERIFIED COMPLAINT and knows the contents thereof; that the same are true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters deponent believes them to be true.

Deponent further says that the source of deponent's information and the grounds of deponent's belief as to all matters not stated upon deponent's knowledge are from investiations made on behalf of said Plaintiff.

Sworn to before me on
February  7), 200乙

----------------------
NOTARY PUBLIC

THOMAS J. LAVIN
Notary Public, State of New York
No. 03-5002952
Qualified in Bronx County
Commission Expires October 13, 2010

Index No.
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

MELANIE M.COLON,

       Plaintiff(s),

     -against-

BERNABE GUTIERR BERNADIN and
SALEM TRUCK LEASING, INC. and
PIGTAINER INC.,

       Defendant(s),

-----------------------------------------------------------------X

## SUMMONS AND VERIFIED COMPLAINT

## THE LAW OFFICE OF THOMAS J. LAVIN
*Attorneys for Plaintiff*
**2980 Bruckner Boulevard**
**Bronx, NY 10465**
**(718)829-7400**

TO:

*SUPREME COURT OF THE STATE OF NEW YORK*
*COUNTY OF BRONX*

---------------------------------X
MELANIE M. COLON,

                           Index No. 7519/07

        Plaintiff,

                           **VERIFIED ANSWER**

-against-

BERNARDIN   GUTIERR   BERNABE,
SALEM TRUCK LEASING, INC. and
PIGTAINER, INC.

        Defendants.

---------------------------------X

    Defendants, BERNARDIN GUTIERR BERNABE, SALEM TRUCK LEASING,
INC. and PIGTAINER, INC., by way of Answer to the Complaint, say:

<u>FIRST COUNT</u>

    1.   These   defendants   have   insufficient   knowledge   or
information to admit or deny the allegations contained in Paragraph
One of the Complaint.

    2.   These defendants admit   the   allegations   contained   in
Paragraph Two of the Complaint.

    3.   These defendants admit   the   allegations   contained   in
Paragraph Three of the Complaint.

    4.   These defendants admit   the   allegations   contained   in
Paragraph Four of the Complaint.

    5.   These defendants admit   the   allegations   contained   in
Paragraph Five of the Complaint.

    6.   These defendants deny   the   allegations   contained   in
Paragraph Six of the Complaint.

    7.   These   defendants   have   insufficient   knowledge   or
information to admit or deny the allegations contained in Paragraph

Seven of the Complaint.

8.    These defendants admit the allegations contained in Paragraph Eight of the Complaint.

9.    These defendants have insufficient knowledge or information to admit or deny the allegations contained in Paragraph Nine of the Complaint.

10.    These defendants have insufficient knowledge or information to admit or deny the allegations contained in Paragraph Ten of the Complaint.

11.    These defendants deny the allegations contained in Paragraph Eleven of the Complaint.

12.    These defendants have insufficient knowledge or information to admit or deny the allegations contained in Paragraph Twelve of the Complaint.

13.    These defendants have insufficient knowledge or information to admit or deny the allegations contained in Paragraph Thirteen of the Complaint.

14.    These defendants have insufficient knowledge or information to admit or deny the allegations contained in Paragraph Fourteen of the Complaint.

15.    These defendants have insufficient knowledge or information to admit or deny the allegations contained in Paragraph Fifteen of the Complaint.

16.    These defendants have insufficient knowledge or information to admit or deny the allegations contained in Paragraph Sixteen of the Complaint.

17.   These   defendants   have   insufficient   knowledge   or information to admit or deny the allegations contained in Paragraph Seventeen of the Complaint.

18.   These   defendants   have   insufficient   knowledge   or information to admit or deny the allegations contained in Paragraph Eighteen of the Complaint.

19.   These   defendants   have   insufficient   knowledge   or information to admit or deny the allegations contained in Paragraph Nineteen of the Complaint.

20.   These   defendants   have   insufficient   knowledge   or information to admit or deny the allegations contained in Paragraph Twenty of the Complaint.

21.   These   defendants   have   insufficient   knowledge   or information to admit or deny the allegations contained in Paragraph Twenty-One of the Complaint.

22.   These   defendants   have   insufficient   knowledge   or information to admit or deny the allegations contained in Paragraph Twenty-Two of the Complaint.

23.   These   defendants   have   insufficient   knowledge   or information to admit or deny the allegations contained in Paragraph Twenty-Three of the Complaint.

24.   These   defendants   have   insufficient   knowledge   or information to admit or deny the allegations contained in Paragraph Twenty-Four of the Complaint.

25.   These   defendants   have   insufficient   knowledge   or information to admit or deny the allegations contained in Paragraph

Twenty-Five of the Complaint.

26. These defendants have insufficient knowledge or information to admit or deny the allegations contained in Paragraph Twenty-Six of the Complaint.

27. These defendants have insufficient knowledge or information to admit or deny the allegations contained in Paragraph Twenty-Seven of the Complaint.

28. These defendants have insufficient knowledge or information to admit or deny the allegations contained in Paragraph Twenty-Eight of the Complaint.

29. These defendants deny the allegations contained in Paragraph Twenty-Nine of the Complaint.

30. These defendants deny the allegations contained in Paragraph Thirty of the Complaint.

31. These defendants deny the allegations contained in Paragraph Thirty-One of the Complaint.

32. These defendants deny the allegations contained in Paragraph Thirty-Two of the Complaint.

33. These defendants deny the allegations contained in Paragraph Thirty-Three of the Complaint.

34. These defendants deny the allegations contained in Paragraph Thirty-Four of the Complaint.

35. These defendants deny the allegations contained in Paragraph Thirty-Five of the Complaint.

36. These defendants have insufficient knowledge or information to admit or deny the allegations contained in Paragraph

Thirty-Six of the Complaint.

37. These defendants have insufficient knowledge or information to admit or deny the allegations contained in Paragraph Thirty-Seven of the Complaint.

38. These defendants deny the allegations contained in Paragraph Thirty-Eight of the Complaint.

Defendants, BERNARDIN GUTIERR BERNABE, SALEM TRUCK LEASING, INC. and PIGTAINER, INC. , reserve the right to amend this answer and to assert additional defenses and/or supplement, alter or change the answer upon completion of appropriate investigation and discovery.

## AFFIRMATIVE DEFENSES

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

The injuries and damages, if any, sustained by the plaintiff were caused by her sole, contributory or comparative negligence and in plaintiff's failure to make proper observations and exercise reasonable care under the existing circumstances.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

Plaintiff's injuries and damages, if any, were caused by acts of third persons, entities or conditions over whom these defendants had no control and/or no duty to control.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

While denying any negligence on the part of these defendants, should it be adjudged otherwise, then these defendants liability should be limited as provided by the terms and provisions of Article 14 of the New York Civil Practice Law & Rules.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

While denying any negligence on the part of these defendants, should it be adjudged otherwise, then defendants' liability should be limited or plaintiff barred from recovery as provided by the terms and provisions of Article 14A of the New York Civil Practice Law & Rules.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

The damages, if any, sustained by plaintiff were the result of an independent, intervening cause for which these defendants may not be held liable.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

While denying any negligence on the part of these defendants, should it be adjudged otherwise, then defendants' liability should be limited as provided by the terms and provisions of Article 16 of the New York Civil Practice Law & Rules.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

Plaintiff has not sustained a serious injury as defined by Insurance Law Section 5102(d).

## AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

Plaintiff has not sustained economic loss greater than basic economic loss as defined by Insurance Law Section 5102.

**WHEREFORE**, Defendant, PIGTAINER, INC., BERNARDIN GUTIERR BERNABE and SALEM TRUCK LEASING, INC. demand judgment dismissing the Complaint along with the costs and disbursements of this action.

Dated:     New York, New York
           March 9, 2007

                              HARDIN, KUNDLA, MCKEON & POLETTO, P.A.
                              Attorneys for Defendant, PIGTAINER,
                              INC., BERNARDIN GUTIERR BERNABE and
                              SALEM TRUCK LEASING, INC.
                              110 William Street
                              New York, New York 10038
                              (212) 571-0111


                   By:     _____
                              Stephen J. Donahue

## VERIFICATION

STATE OF NEW YORK  )
                   )  ss.:
COUNTY OF NEW YORK )

Stephen J. Donahue, an attorney duly admitted to the practice of law in the Courts of the State of New York, says:

I am an attorney with the firm of Hardin, Kundla, McKeon & Poletto, P.A., attorneys for Defendants, PIGTAINER, INC., BERNARDIN GUTIERR BERNABE and SALEM TRUCK LEASING, INC. in the within action. I have read the foregoing Verified Answer and know the contents thereof; and the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true. The grounds of my belief as to all matters not stated upon my own knowledge are a review of the files and documents furnished to me by the representatives of said defendant, and/or counsel for plaintiffs. This verification is being made by me because Defendant is not in the County where I maintain my office.

Stephen J. Donahue, Esq.
Attorney for Defendants, PIGTAINER,
INC., BERNARDIN GUTIERR BERNABE and
SALEM TRUCK LEASING, INC.

Index No.  7519/07                    Year

MELANIE M. COLON

                              plaintiff

-against-

BERNARDIN GUTIERR BERNABE, et. al.,

                              Defendants

VERIFIED ANSWER

HARDIN, KUNDLA, MCKEON & POLETTO, P.A.
Attorneys for Defendants, PIGTAINER, INC., BERNARDIN GUTIERR
BERNABE and SALEM TRUCK LEASING, INC.

                    Office Address & Tel. No.:
                    110 William Street
                    New York, New York 10038
                    (212)571-0111

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon
information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.
Dated: March 9, 2007          Signature ...........................................
                              Print Signer's Name  Stephen J. Donahue

                                                            is hereby admitted.

Service of a copy of the within

Dated:                        ...........................................

                                        Attorney(s) for

PLEASE TAKE NOTICE

☐        that the within is a (certified) true copy of a
         entered in the office of the clerk of the within named Court on

NOTICE OF
ENTRY

☐        that an Order of which the within is a true copy will be presented for settlement to the  Hon.
         one of the judges of the within named Court,

NOTICE OF          at                              , at              M
SETTLEMEN          on
T

Dated:                        Attorney(s) for

                                        Office Address & Tel. No.:

Z00Ø  1997Z  ON XYⱭⱭ⅃⅃  Ab:8Ø.⅃ꓭⱭ L00Z−ƐL−ꓤⱯW

## SALEM
TRUCK LEASING, inc.

Page 1 of 7

# TRUCK LEASE AND SERVICE AGREEMENT

THIS AGREEMENT is made as of the      Sixth      day of   August      , 19 98 .
between SALEM TRUCK LEASING, INC., with an address at 9505 Avenue D, Brooklyn, New York 11236 ("Salem"),
and     BERARDINO BERNABE GUTIERREZ

Partnership      Corporation   (State of Incorporation)
address at      223 Hope Ave.                                     Proprietorship, with an
Passaic, NJ. 07055

("Customer").

*Navistar Financial Corporation possesses a
security interest in the within lease and the
rights to rentals thereunder.*

**Paragraph (1)**   **PROPERTY COVERED**

Salem agrees to lease to Customer and Customer agrees to lease from Salem the equipment described on each Schedule A now or later executed by Salem and Customer. That equipment and all other equipment provided to Customer under this Agreement is referred to as the "Vehicle." Execution of a Schedule A by Customer is Customer's authorization to Salem to acquire the Vehicle listed on that Schedule A. This Agreement shall become effective for each Vehicle listed on Schedule A when the Schedule A for the Vehicle is executed by the parties. Acceptance of a Vehicle by Customer is an acknowledgement that the Vehicle complies with Customer's specifications. Customer agrees to pay for the cost, installation and maintenance of any alterations, pollution-related or safety-related equipment required by Customer or by a governmental agency after the date of the applicable Schedule A. A Vehicle provided by Salem to Customer for use during the period between the date a Schedule A is signed by Customer and Salem and the Date in Service of a Vehicle listed on Schedule A is an "interim" Vehicle. If Salem provides Customer with an interim Vehicle, it shall be subject to all the provisions of this Agreement, for the period of time while Salem provides it for Customer's use. A Vehicle provided by Salem to Customer which is neither listed on Schedule A, an interim Vehicle nor a substitute Vehicle (under Paragraph 7), is an "extra" Vehicle. If Salem provides Customer with an extra Vehicle, it shall be subject to all the provisions of this Agreement for the period of time while Salem provides it for Customer's use, except for the charges which shall be paid by Customer under Article 19. Salem shall have no obligation to do any special painting or lettering on, or furnish any special equipment for, an interim, extra or substitute Vehicle.

**Paragraph (2)**   **TERM**

The term of this Agreement for each Vehicle shall begin on the Date in Service shown on Schedule A and shall expire when the Term shown on Schedule A has elapsed. Customer authorizes Salem to insert the Date in Service, Unit Number, Model Year, and Serial Number of the Vehicle on Schedule A. The Date in Service shall be the date on which Salem notifies Customer that the Vehicle is available for Customer's use.

On the expiration of a Vehicle's term Customer shall return the Vehicle to Salem at the location designated by Salem in the same condition as on the Date in Service, reasonable wear and tear excepted, including removal of all graffiti at Customer's expense. Customer shall have no right and no obligation to buy a Vehicle for which the Term has expired. A Vehicle not returned on or prior to its expiration date shall continue to be subject to the terms and conditions of this Agreement and Customer agrees to return the Vehicle to Salem on written notice.

**Paragraph (3)**   **MAINTENANCE AND SERVICES**

A.  Salem agrees to provide:

1.  Oil, lubricants, tires, tubes, and all other operating supplies and accessories necessary for the proper operation of the Vehicle;
2.  Maintenance and repairs which may be required to keep the Vehicle in good operating condition and appearance; and,
3.  Initial lettering, according to Customer's specifications, in an amount not more than shown on Schedule A, Column 11.

B.  Customer agrees to return each Vehicle to Salem for service and maintenance at facilities designated by Salem for a minimum of eight (8) hours at intervals specified by Salem during Salem's normal business hours. Each time that a Vehicle is returned to Salem's facility, Customer's driver shall report in writing any adjustments or repairs needed on the Vehicle. Except as so reported, it shall be presumed that the Vehicle operated satisfactorily.

C.  Customer agrees not to cause or permit any party other than Salem or parties expressly authorized by Salem to make repairs or adjustments to the Vehicle. When repairs are necessary, Customer shall notify Salem by the speediest means of communication available. Salem will not be responsible for any repair or service while the Vehicle is away from Salem's facility, unless expressly authorized by Salem.

D.  If Salem authorizes repairs or adjustments under subParagraph C above, Customer shall, within thirty (30) days from the date of purchase by Customer of any item for which it seeks reimbursement, furnish to Salem substantiation of the purchase by a dated original receipt showing cost, Unit Number, date of purchase, hubodometer reading at time of purchase and Customer's driver's signature.

E.  Salem shall wash each vehicle once a month at
8 Hackensack Ave., South Kearny, NJ.

**Paragraph (4)** **FUEL**

A.   The party designated on Schedule A agrees to provide fuel for the Vehicle.

B.   The party designated on Schedule A agrees to secure and pay for fuel bonds and/or fuel tax permits for the Vehicle. If Salem is designated, Salem will, where permitted by law, post fuel bonds and/or secure and pay for fuel tax permits in those states designated by Customer as of the date of Schedule A. Customer agrees to pay the cost of all licenses, fuel permits and fuel bonds in excess of the amount shown on Schedule A.

C.   The party designated on Schedule A agrees to provide fuel tax reporting for the Vehicle:

1.   If Salem is designated:

a.   Salem will prepare and file the fuel tax returns and pay the taxes imposed on the purchase and consumption of fuel, provided Customer provides Salem weekly with all trip reports, original fuel tickets or invoices, and other documents relating to the use of the Vehicle which may be necessary for the preparation of fuel tax returns.

b.   Customer shall reimburse Salem for all fuel taxes paid by Salem in excess of the fuel taxes which would have been payable with respect to the fuel used by customer, had such fuel been purchased in the state of consumption.

2.   If Customer is designated, Customer will indemnify and defend Salem from any liability, real or asserted, arising from improper or untimely fuel tax reporting.

**Paragraph (5)** **LICENSES**

A.   The party designated on Schedule A will secure and pay for base motor Vehicle registration for the state designated on Schedule A. Any additional state or proration registration or tags that may be needed will be at Customer's expense. If Salem is designated, each Vehicle shall, if possible, be licensed in Salem's name in the appropriate states. Increases in the cost of licenses shall be paid by Customer under Paragraph 4B.

B.   Salem agrees to file Federal Highway Use Tax ("FHUT") returns and to pay FHUT up to the amount shown on Schedule A. Increases in the cost of FHUT shall be paid by Customer.

C.   Customer agrees to pay for any license or pay any taxes, including but not limited to, mileage taxes, ton mileage taxes and highway or bridge tolls, resulting from the use of the Vehicle except those expressly assumed by Salem. Salem shall have the right to pay or discharge any lien or encumbrance asserted against the Vehicle as a result of Customer's failure to pay any claim or assessment for any such taxes. Customer shall promptly reimburse Salem for such payment. Customer agrees to pay any expenses Salem may incur as a result of a change in Customer's operation of the Vehicle or a change in the area of Customer's operation.

**Paragraph (6)** **TRIP REPORTS**

(Mileage)

Customer agrees to provide Salem each week with timely and complete ~~trip reports showing~~ ~~mileage runs in each state.~~ Customer shall be liable for each assessment, penalty, loss of credit or mileage adjustment due to negative audit findings, ~~where not timely and accurate reports are~~ ~~provided to Salem. In addition, Customer agrees to pay Salem a surcharge of five (5) cents per mile~~ ~~for each mile run for which a trip report has not been properly provided to Salem.~~

**Paragraph (7)** **SUBSTITUTION**

A.   Salem agrees to furnish Customer, if a similar type is reasonably available from Salem, a substitute Vehicle for any Vehicle temporarily inoperable due to mechanical failure, except as provided below. The substitute Vehicle shall be furnished at no additional charge and shall be subject to all the terms and conditions of this Agreement. Salem shall have no obligation to furnish a substitute Vehicle if the Vehicle is out of service: (1) ~~for ordinary maintenance~~; (2) because of damage resulting from collision, upset, theft or abusive handling; (3) for repair or maintenance of any truck body, trailer or other equipment or accessories which Salem has not agreed in writing to maintain; or (4) as a result of damage to a Vehicle caused by failure of equipment not supplied by Salem.

If Salem fails to supply a substitute Vehicle when it is regarded to do so, and such failure extends for more than twenty-four (24) hours (weekends and holidays excepted), the charges for the Vehicle for which Salem is obligated to provide a substitute shall abate until Salem either returns the Vehicle or furnishes a substitute. There shall be no other liability whatsoever on the part of Salem for loss of business or any other damage to Customer for the failure to supply a substitute Vehicle other than the abatement described in the preceding sentence. Customer agrees, on notice from Salem, to return a substitute Vehicle promptly to Salem's service facility from which that Vehicle was furnished. Customer agrees to pay Salem's rental rates as covered in Article 21 for any substitute Vehicle not returned within forty-eight (48) hours of notice.

B.   If a Vehicle is worn or expended to such an extent that, in Salem's reasonable opinion, complete repair, restoration or maintenance would be excessively expensive, Customer agrees that Salem may, at its option and upon sixty (60) days prior written notice, replace that Vehicle with another Vehicle with a similar carrying capacity and value for the balance of the original Vehicle's term. The date of replacement shall serve as the expiration of the term for the original Vehicle replaced. The replacement Vehicle shall be subject to all the provisions of the Agreement.

**Paragraph (8)** **DRIVERS AND VEHICLE CARE**

Customer agrees that the Vehicle shall be operated only by its employees or agents who will be careful, properly licensed and legally qualified drivers and at least twenty-one (21) years of age. Customer's drivers shall be paid by and subject to Customer's exclusive direction and control. Customer shall require its drivers to operate the Vehicle with reasonable care and to use every reasonable precaution to prevent any loss or damage. Customer agrees that no passengers will be carried in any Vehicle except for duly authorized agents of Customer. If Salem reasonably

determines that any loss or damage occurred or is likely to occur because of careless, reckless, intentional or abusive conduct by any driver, Salem shall notify Customer and Customer shall not permit such driver to operate the Vehicle unless Customer is prevented from doing so by a written agreement. Customer agrees to pay for any loss or damage which results from careless, reckless, intentional or abusive conduct by any driver. Customer agrees to provide Salem with official driving records of Customer's drivers.

**Paragraph (9)    USE AND OPERATION**

    A.  Customer agrees that the Vehicle will be used by Customer only in the ordinary course of Customer's business, and in compliance with every applicable law, rule and regulation. Customer represents that the Vehicle will not be used for personal, family or household purposes.

    B.  Customer shall be responsible for repair and replacement of all tools, tarps, spare tires, accessories and safety equipment provided by Salem for use with the Vehicle. Customer shall be responsible for any damage to the Vehicle by failing to maintain proper fluid levels, driving the Vehicle with a flat tire, and modifying or tampering with the engine or any other portion of the Vehicle. Customer agrees to pay for damage to tires not caused by ordinary wear and tear.

    C.  Customer agrees to do the following during freezing weather: if the Vehicle is equipped with an engine heater, to provide and use a properly operating electrical outlet for the heater. Customer shall pay the expenses incurred by Salem for failure to comply as provided for herein.

**Paragraph (10)    CHARGES**

    A.  Salem will invoice Customer each month in advance for the Rate Per Month, and for all other charges due under this Agreement including applicable taxes. Customer agrees to pay each invoice,

TEN  without offset, within ~~FIFTEEN (7)~~ days of the date of the invoice. Each invoice shall be deemed correct

TEN  unless Customer shall, in writing, protest it within 7 days of its date. Customer agrees to pay a service

TEN  charge on invoices not paid within ~~FIFTEEN (2)~~ days. The service charge shall be the lower of 1½% per

14%  ~~month (18% per year)~~ or the highest lawful rate of interest, *if 14% is not allowed*.

    B.  Customer shall supply Salem each month with the mileage traveled from hubodometer and odometer readings. If the hubodometer or odometer fails to function, the mileage for the period may be determined on the basis of mileage traveled for the previous thirty (30) days. Hubodometer and odometer malfunctions shall be promptly reported to Salem.

10A) Cont.  Service Charges Will Only Apply To Proper Charges.

**Paragraph (11)    ADJUSTMENT OF CHARGES**

    The parties recognize that the charges shown on Schedule A are based on Salem's current costs of labor, parts, supplies and other items. The parties agree that the charges shall be adjusted in accordance with increases and decreases in the Consumer Price Index for All Urban Consumers (CPI-U), using a 1967 base period, published by the U.S. Department of Labor, Bureau of Labor Statistics for N.Y., N.Y.-Northeastern N.J. For each rise or fall of 1% in the CPI-U, the Fixed Rental Charge Per Month, Rate Per Hour and the Mileage Rates written on Schedule A shall be increased or decreased by ~~32%~~.  ½%

    Upon adjustment, the Fixed Rental Charge Per Month shall be rounded to the nearest whole cent, and the Rate Per Hour and Mileage Rate Per Mile shall be rounded to the nearest one-tenth cent.  (12)

    The first adjustment shall be effective with the next invoice ~~SIX (6)~~ months after the Date in Service. The remaining adjustments shall be effective at ~~six (6)~~ month intervals after the first adjustment. Each adjustment shall be based on the difference between the most recently published CPI-U written on Schedule A.  (12)

    If the CPI-U is discontinued, Salem and Customer will select a reasonable comparable alternative for the adjustment of charges.  (C.P.I. Increase Will Be Limited To 4% Annually)

**Paragraph (12)   INSURANCE**

    A.  <u>Liability Insurance Responsibility</u>

    1.  Standard policy of automobile liability insurance (hereafter Liability Insurance) with limits specified on each Schedule A shall be furnished and maintained by the party designated on Schedule A at its sole cost, written by a company satisfactory to Salem covering both Salem and Customer as insureds for the ownership, maintenance, use or operation of the Vehicles and any Vehicle being provided as a substitute and extra therefor. Such policy shall provide that coverage afforded cannot be cancelled or materially altered without thirty (30) days prior written notice to both parties. The party designated shall furnish to the other party certificates to evidence compliance with this provision.

    2.  If Salem is procuring Liability Insurance, upon not less than sixty (60) days prior written notice to Customer, Salem shall have the right to terminate Liability Insurance coverage maintained by Salem and Customer shall be obligated to procure and maintain Liability Insurance in the limits set forth on Schedule A as of the effective date of termination and the charges will be adjusted accordingly.

    3.  If Customer is obligated to procure and maintain Liability Insurance and fails to do so, or fails to furnish Salem the required evidence of insurance, Customer shall indemnify and hold Salem harmless from and against any claims or causes of action for death or injury to persons, or loss of damage to property and Salem shall be authorized but not obligated to procure such Liability Insurance, without prejudice to any other remedy Salem may have, and Customer shall pay Salem, as additional rental, the amount of the premium paid by Salem. The failure to maintain Liability Insurance when the Customer is obligated to procure such insurance, or the failure to furnish Salem the required evidence of insurance shall constitute a default under this agreement and Salem shall have the right to terminate the agreement and enforce the remedies contained herein.

4.   Customer agrees to release, indemnify, and hold Salem harmless from and against any claims or causes of action for death or injury to persons, or loss or damage to property in excess of the limits of Liability Insurance or to the extent not covered whether provided by Salem or Customer, as indicated on Schedules A, arising out of or caused by the ownership, maintenance, use or operation of any Vehicle leased or furnished hereunder, and any such claims or causes of action which Salem shall be required to pay as a result of any statutory requirements of insurance and which Salem would not otherwise, pursuant to the terms hereof, be required to pay.

5.   Salem will, where required and permitted by law, upon request of Customer, file State and/or Interstate Commerce Commission Certificates of Automobile Liability Insurance covering the Vehicles. Customer agrees to indemnify, defend, and save Salem harmless from all claims, causes of action, suits and damages arising out of filing such documents for Vehicles other than leased Vehicles.

6.   Customer further agrees to release and hold Salem harmless for death or injury or property damage to Customer, Customer's employees, drivers, passengers or agents, arising out of the ownership, maintenance, use or operation of any Vehicle leased or furnished hereunder.

B.   Physical Damage Responsibility

1.   In the event Salem is designated:

a.   Salem will pay for loss or damage to each Vehicle in excess of the amounts specified on Schedules A EXCEPT (i) collision with an overhead object; (ii) any willful damage to the Vehicle arising out of or in connection with any labor dispute; (iii) conversion of any Vehicle by an agent or employee of Customer which shall not be considered theft within the terms of this provision; (iv) the loss by theft of tools, tarpaulins, accessories, spare tires and other such appurtances. Customer shall pay up to the amount specified on Schedule A as deductible, for loss or damage to any Vehicle, including related expenses, from each occurrence and shall pay for all loss or damage to any Vehicle resulting from any perils specifically not assumed by Salem herein.

b.   Upon not less than sixty (60) days prior written notice to Customer, Salem shall have the right (i) to terminate any Physical Damage coverage procured or maintained by Salem and (ii) to increase Customer's Physical Damage Responsibility to an amount with respect to each Vehicle equal to the agreed value of such Vehicle computed in accordance with Paragraph 15 as of the time of damage or loss, and each of the charges specified on Schedule A shall be decreased accordingly.

c.   In the event Salem terminates Physical Damage coverage, Customer shall be obligated to procure and maintain Physical Damage coverage acceptable to Salem and each of the charges shall be adjusted accordingly. Customer agrees to furnish Salem certificates necessary to evidence compliance with this Paragraph.

d.   If Customer is obligated to procure and maintain Physical Damage coverage and fails to do so, or fails to timely furnish Salem with evidence of such coverage, Customer agrees to reimburse Salem all its loss, cost and expense resulting from loss of or damage to the Vehicles or any Vehicle being used as a substitute and extra therefor. The failure of the Customer to procure and maintain Physical Damage coverage or the failure to timely furnish Salem with evidence of such coverage shall constitute a default under this agreement pursuant to Paragraph 14 hereof.

2.   In the event Customer is so designated:

a.   Customer will pay for all loss or damage to any Vehicle or any Vehicle being used as a substitute and extra therefor, including related expenses including towing arising from any cause, but Customer's liability shall not exceed the purchase price of the damaged Vehicle computed according to the provisions of Paragraph 15 at the time of such loss or damage.

b.   Customer further agrees to furnish Salem with a policy of insurance acceptable to Salem with Salem as a named insured or endorsed as a loss payee having a deductible amount not to exceed the amount specified on Schedule A, failing in which, Salem may obtain such insurance and add the cost thereof prorata to the charges for the Vehicles. Failure of the Customer to comply with any of the provisions contained herein shall constitute a default pursuant to Paragraph 14 hereof.

C.   Notice of Accident

Customer agrees to notify Salem immediately upon the happening of any accident or collision involving the use of a Vehicle by the speediest means of communication available and to cause the driver to make a detailed report in person at Salem's office as soon as practicable, and to properly render all other assistance to Salem and the insurer that is requested by either of them in investigation, defense or prosecution of any claims or suits. In the event Customer fails to cooperate, the Customer shall be responsible for all damages to person and property or persons and entities involved in the accident and shall indemnify and hold Salem harmless from liability for such loss or damage. Additionally, if the Customer fails to cooperate, such shall constitute a default pursuant to Paragraph 14 hereof.

D.   Cargo Insurance

Customer agrees to release and hold Salem harmless from liability for loss or damage to any goods or other property in or carried on any Vehicle whether such loss or damage occurs in Salem's facility or elsewhere. Customer shall, at its sole expense, include Salem as a named insured in any and all cargo or transportation or floater insurance policies covering Customer with respect to any loss or damage to such goods or property. Customer waives any legal right right of recovery against Salem for any such loss or damage. Customer shall reimburse Salem for loss of any tools, tarpaulins, accessories, spare tires or other equipment furnished by Salem.

E.  Vehicle Theft or Destruction                                         Page 5 of 7

If a Vehicle is lost or stolen and remains so for thirty (30) days after Salem has been notified, the lease as to such Vehicle shall then terminate provided all charges for such Vehicle have been paid to that date and provided any amounts due Salem pursuant to Paragraph 12B have been paid. Salem shall not be obligated to provide a substitute Vehicle during said thirty (30) day period. If a Vehicle is, in Salem's opinion, damaged beyond repair, Salem shall notify Customer within thirty (30) days after Salem has been advised of the loss. Upon receipt of Salem's notice that the Vehicle has been damaged beyond repair, provided all charges for such Vehicle have been paid to that date and provided any amounts due Salem pursuant to Paragraph 12B hereof have been paid, the lease as to such Vehicle shall then terminate.

Paragraph (13)  **EARLY TERMINATION**

~~[struck through text]~~

~~[struck through text]~~

~~[struck through text]~~

~~[struck through text]~~

2.

Paragraph (14)  **DEFAULT**

A.   Each of the following shall constitute a default pursuant to Paragraph 14 of this agreement notwithstanding any language to the contrary contained herein:

1.   If Customer fails to pay charges when due;            (Material Obligations)
2.   If Customer fails or refuses to perform any of its obligations under this Agreement;
3.   If Customer becomes insolvent, voluntarily liquidates, files a voluntary petition in bank-ruptcy, makes an assignment for the benefit of creditors, is adjudicated bankrupt by a court of competent jurisdiction, permits a receiver to be appointed for its business, or permits or suffers a material disposition of its assets; or,
4.   If any representation by Customer or its guarantor made in connection with this Agreement proves to be incorrect in any material respect.

If Customer Is In   B.   If Customer ~~[struck through]~~, discontinue all services to
Default Under       Customer and take possession of the Vehicle and Salem is expressly authorized to enter any location
Paragraph 14(C)     where the Vehicle may be and remove, retain and refuse to redeliver the Vehicle to Customer until the
Salem May           Default is cured. Such action by Salem shall not constitute a termination of this Agreement. All
charges under this Agreement shall continue until the Agreement is terminated or expires. ~~[struck through]~~
~~[struck through text]~~
~~[struck through text]~~

C.   If Customer's Default continues for ~~XX~~ days after written notice has been given to Customer, Salem may (in addition to its other remedies) terminate this agreement. Upon termination, Customer shall, at Salem's option, do one or more of the following:

1.   (a)  Purchase within ten (10) days the Vehicle terminated for the Purchase Price described in Paragraph 15; or,  (b)  Pay Salem within ten (10) days the difference between the Purchase Price described in Paragraph 15 and the wholesale fair market value of the Vehicle as determined by an independent appraiser selected by Salem; and,
2.   Pay all charges through the date of purchase or payment under Subparagraph 1 above; and,
3.   Pay, as liquidated damages, an amount equal to the Rate Per Month (or the Rate Per Mile if the Vehicle is subject to the Guaranteed Mileage provision) for the period from the termination date through the next date on which Customer could terminate the Agreement under Paragraph 13, less Depreciation Per Month for the same time period. In determining said liquidated damages the parties have made due allowance for Salem's investment in buying and/or reconditioning the leased Vehicle(s), the uncertainty of leasing them to others, cost to Salem for the period during which they remain idle or if sold, the uncertainty of the sales price and Salem's loss in selling said Vehicle(s), commissions, and legal expense to be paid, etc. Due allowance has also been made for the savings in not furnishing gas, oil, and the other services.

D.   Salem's remedies under this Paragraph 14 are cumulative. Pursuit of any one remedy by Salem under this provision is without prejudice to Salem's other remedies and does not constitute an election of remedies. Salem may exercise any remedy provided under this Agreement, at law or in equity. Failure by Salem to pursue any remedy because of a Default is not a waiver of the Default. The acceptance of payments by Salem shall not be deemed a waiver of the Default unless Salem expressly agrees to waive the Default in writing. If payments due under this agreement are not made at the time required, Salem may exercise any of its remedies afforded by this Agreement or by law.

E.   ~~[struck through text]~~

Paragraph (15)  **PURCHASE PRICE**   (This Paragraph Has Been Deleted In Its Entirety)

A.   The Purchase Price of the Vehicle ~~[struck through text]~~

1.   ~~[struck through text]~~

**     (THIS IS THE LAST SENTENCE OF PARAGRAPH 14B)
The Prevailing Party Shall Be held Harmless From All Costs And Expenses
including attorneys fees incurred as a result of any alleged breach this

2. ~~[struck-through text, illegible]~~

XX. ~~[struck-through text, illegible]~~

X. ~~[struck-through text, illegible, multiple lines]~~

Paragraph (16) **INDEMNITY**

Customer releases and agrees to indemnify, defend and hold Salem harmless from any liability for losses resulting to Customer by reason of delay in delivery or failure to deliver products by Customer.

Paragraph (17) **LEASE ONLY - PRODUCT LIABILITY**

This is a contract of leasing only. Notwithstanding its possession and use of a Vehicle, Customer shall acquire no ownership interest in or title to a Vehicle unless expressly provided for by the terms of this Agreement. Customer agrees that Salem is not the manufacturer or designer of the Vehicle. SALEM MAKES NO WARRANTIES EITHER EXPRESSED OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR USE INTENDED, OR OF ANY KIND OR CHARACTER NOT EXPRESSLY STATED IN THIS AGREEMENT. SALEM SHALL NOT BE RESPONSIBLE FOR ANY LIABILITY, REAL OR ASSERTED, ATTRIBUTABLE TO ANY DEFECT OR DEFICIENCY IN A VEHICLE, ARISING OUT OF ITS MANUFACTURE OR DESIGN.

Paragraph (18) **FORCE MAJEURE**

Salem shall incur no liability to Customer for failure to deliver, supply or repair a Vehicle or provide fuel for a Vehicle if prevented by a national emergency, war, riot, fire, labor dispute, Federal, State or local law, rule, regulation, shortage (local or national), or allocation program, delay in production or delivery by any manufacturer, or any other cause beyond Salem's reasonable control. If a Vehicle is out of service due to a circumstance listed above for a period longer than thirty (30) consecutive days then the charges for each week for the rest of the period of interruption shall be reduced to the total of twice the Depreciation Per Week and the prorated part of Salem's fixed costs for items such as permits, bonds, taxes and licenses. It is understood that Salem may have to order the Vehicle. The Vehicle shall be made available for Customer as soon as practical after Salem receives it from the manufacturer, but Salem shall not be responsible for delay in delivery. If Customer fails to take delivery within ten (10) days after Salem notifies Customer the Vehicle is ready, Salem may exercise its Default remedies.

Paragraph (19) **EXTRA VEHICLES**

Upon Customer's request for extra Vehicles, Salem will, so long as it has the same available, supply to Customer extra Vehicles for temporary use for such a period and of such type as shall have been mutually agreed upon. Such extra Vehicles will be supplied to Customer upon the same terms, conditions and limitations as are in this Agreement contained, except that the daily rental charge to be paid by Customer to Salem for the use of any additional Vehicle shall be the then current lease rate plus 15% for similar Vehicles. Dissimilar Vehicles shall be at the prevailing rental rate less 10%. The daily rental rates shall be computed at one-fifth of the weekly rate for similar Vehicles.

Paragraph (20) **ASSIGNMENT**

The terms and conditions of the Agreement shall bind and inure to the benefit of the legal representatives, successors and assigns of the parties, but Customer shall have no right of assignment or subletting without the prior written consent of Salem. If Salem assigns its rights to sums due under this Agreement, Customer shall look only to Salem for performance of the obligations under this Agreement and to to any such assignee. Customer shall assert no claims against the amounts due to the assignee. Each Vehicle will be subject to any rights and interest in and to that Vehicle under any installment sales instrument, mortgage or security agreement which a financing source may hold.

This Agreement is for the benefit of the parties and, except for the rights of any assignee of Salem, no other entity shall have any rights under this Agreement.

Paragraph (21) **FINANCIAL STATEMENTS**

~~[struck-through text, illegible]~~

Paragraph (22) **MISCELLANEOUS**

A. Agreement and Schedules — This Agreement and the Schedules which are executed now or at any later date contain and merge all agreements, representations and understandings of the parties. All Schedules executed now or at a later date are a part of this Agreement and are incorporated by reference.

B.  Headings — The headings and location of provisions are for convenience only.

C.  Customer — Wherever "Customer" is used, it shall include all of Customer's drivers, servants and agents, whether or not they are considered for other purposes to be affiliated with Customer. Wherever the singular is used in this Agreement, it shall include the plural, and vice-versa as the context may require.

D.  Invalidity — If any provision of this Agreement, or the application of any provision to any person or circumstance, is held invalid or unenforceable, the remainder of this Agreement, and the application to other persons or circumstances, shall remain valid and enforceable.

E.  Execution — This Agreement shall not be binding upon Salem until the Agreement and all applicable Schedules are executed at Salem's corporate office in Brooklyn, New York by the President or a Vice-President of Salem. No amendment or supplement to this Agreement shall be binding or effective until it is in the form of a written agreement signed by Customer and by the President or a Vice-President of Salem in Brooklyn, New York.

F.  Notices — All notices under this Agreement shall be in writing and shall be deemed given when mailed by certified or registered mail with return receipt requested or delivered in person to Salem or Customer at the address shown on page 1, or at another address as may be designated in writing by either party. If a Notice is delivered in person, a copy of the notice shall also be mailed as provided in this Subparagraph F.

G.  New York — This agreement shall be interpreted and enforced under the laws of New York without giving effect to its conflicts of law provisions. The parties submit to the jurisdiction of the Courts of the State of New York and the City of New York and all actions arising out of or in any way connected to this agreement shall be brought in the Courts of the State of New York and the City of New York.

H.  Security — Customer has deposited with Salem Truck Leasing, Inc. the sum set forth in Schedule "A" as security for the full and faithful performances by Customer of all terms, covenants and agreements required to be performed by Customer under this Agreement. Such sum shall be returned to Customer upon termination of this agreement provided Customer has so performed as herein set forth. Salem shall be subject to no restrictions or limitations whatsoever with respect to such funds, nor shall Salem be obligated to pay or accrue any interest thereon.

I.  It is hereby agreed that the rights of the lessee are subject and subordinate to any lien given by lessor to secure the purchase price of the vehicle(s) leased hereby. Assignment of this lease shall not release lessee from any of his obligations thereunder, and assignee shall be entitled to all rights of lessor, free from any defense, set-off or counterclaim by lessee

The parties have signed this Agreement as of the date shown on page 1. Each person who signs below warrants that he or she is duly authorized to sign on behalf of that party.

CUSTOMER  BERNARDINO BERNABE GUTIERREZ   SALEM TRUCK LEASING, INC.

Signature: _____   Signature: _____

Name: _____ (Typed or Printed)   Name: Alan Steinberg (Typed or Printed)

Sec.

Title: _____   Title: _____

Date: _____   Date: _____

Witness: _____   Witness: _____

Responsibility: _____ Salem/Customer _X_ Bodily Injury     $_____ per accident
(if Salem $ _____cost per month)     Property Damage  $_____ per accident
OR Combined Single Limits  $ _1Million_ per accident
Liability Deductible $ _0_ per accident

2. Physical Damage Responsibility by:     ___X___ Salem $_2500.00_ deductible
_____ Customer $_____ deductible

(If Salem $ _150.00_cost per month)

3. Insurance provided by __X_ Salem/Customer _____ for additional vehicles.

4. Fuel provided by _____ Salem/Customer _X__ .
Salem's fuel cost, shall be developed by Salem in accordance with standard cost accounting practices, reported and billed to Customer.

5. Domicile of the Vehicles listed on this Schedule (City) South Kearny, NJ.
Storage By: _____ Salem/Customer _X_

6. Service and maintenance location of Vehicles listed on this Schedule North Arlington, NJ. OH

7. Vehicle(s) will only be operated in the following states: NY. NJ. Conn. PA. VT. RI. NH. Mass Del.
Fuel Permits _____ Mary. Wash.DC. NC. SC. VA. W.VA. Georgia
Provided By: Salem _X_ Customer _____.     At Expense of: Salem _____ Customer _____ X
Fuel Tax Reports to be filed by Salem _____ Customer _X_

8. Additional information concerning present costs: 550.00
    (i)   Federal Highway Use Tax          $ _____     _X_ Salem/Customer _____
    (ii)  Base Plate/Registration           $ 1150.00     _X_ Salem/Customer _____
          (State of  New Jersey
    (iii) Fuel Permits and Fuel Bonds       $ _____     _____ Salem/Customer _____

9. Additional Services: _____ .

10. Security Deposit $ _____

11. Mileage guarantee:  Customer guarantees that each of the vehicles described on this Schedule A will be operated a minimum of _ N/A _ miles within each ____month period during which it is under lease ("Guarantee Period").

The payment of the Mileage Rate per Mile shall be made as provided in Paragraph 9 of the Agreement for miles actually operated.

A settlement of the mileage guarantee will be made at the end of each guarantee period as follows:  If miles actually operated during the period are less than the miles guaranteed, then Customer will be billed by Salem and Customer shall promptly pay to Salem an amount equal to the difference between the number of miles guaranteed and the number of miles operated during the period, multiplied by the Current Mileage Rate per Mile.

If the lease of any vehicle is terminated during any guarantee period, the guarantee shall be prorated for that vehicle on the basis of the actual portion of such period it was under lease.

This Schedule A dated _____ 8-6-98 _____ is hereby made a part of that certain
Truck Lease And Service Agreement dated  August 6th, 1998 _____ between the parties hereto.

CUSTOMER: BERNARDINO BERNABE GUTIERREZ                SALEM TRUCK LEASING INC.

Signature: _____                  Signature: _____

Name: _____                   Name: Alan Steinberg
           (Typed or Printed)                                    (Typed or Printed)

Title: _____                   Title: Sec. _____

Date: _____                    Date: _____

Witness: _____                   Witness: _____

TOTAL P.009

It is agreed that the Original Value (9), Monthly Depreciation (10) and Fixed Charges per month (13) are based upon manufacturer's quoted price for Vehicles as of the date of execution by Customer of this Schedule A. In the event manufacturer's quoted price for such Vehicle is increased prior to the Date of Delivery (2), the Vehicles Customer agrees that Customer's costs shall be adjusted upward accordingly.

| Original Value (9) | Monthly Depreciation (10) | Fixed Charge Per Month (13) |
|---|---|---|
| $90,000 | $X,XXX | $X,XXX |

The Rate Per Month for Vehicle X X is based upon the Interest Rate and Adjustment Rate of Bank, New York, New York, as of the date hereof. In accordance with Lessor Services the Rate Per Month shall be increased or decreased by $XXXXX per month for each 1% of change in the Prime Interest Rate.

The amounts in columns 9, 10 and 13 of this Schedule A will be adjusted on Date of Delivery.

1.  Liability Insurance          Limits:      Bodily Injury      $_____ per person

*SUPREME COURT OF THE STATE OF NEW YORK*
*COUNTY OF BRONX*

-----------------------------X

MELANIE M. COLON,

             Index No. 7519/07

       Plaintiff,

             **DEMAND FOR BILL OF PARTICULARS**

-against-

BERNARDIN   GUTIERR   BERNABE,
SALEM TRUCK LEASING, INC. and
PIGTAINER, INC.

       Defendants.

-----------------------------X

S I R S:

    **PLEASE TAKE NOTICE**, that pursuant to CPLR §3041 to 3044, plaintiff is required to serve upon the undersigned attorneys for Defendant, within 20 days hereof, a Verified Bill of Particulars concerning the following matters:

1. The date, time and location of the occurrence.

2. Detailed description of each physical and/or mental injury sustained.

3. Set forth in what respect plaintiff has sustained a serious injury as defined by Insurance Law §5102(b).

4. Set forth in what respect plaintiff has sustained Economic Loss greater than the basic Economic Loss as defined by Insurance Law §5102(a).

5. Set forth each injury claimed to have resulted in a permanent disability, with a complete description of the nature and degree of disability.

6. The periods of (a) total disability; (b) partial disability.

7. Length of time confined to: (a) bed; (b) home; (c) hospitals.

8. The name of every hospital, clinic or institution where any treatment or examination was rendered, and dates of admission and discharge.

9.  Total amounts claimed as special damages for treatment or examination in hospitals, clinics and/or institutions as a result of the injuries alleged in the Complaint, including a detailed statement as to how such special damages were computed.

10. The name and address of every treating physician, practitioner or therapist who conducted an examination or rendered treatment, and dates of examination and treatment.

11. Name and address of each employer; if self-employed, state nature of self-employment and business address.

12. Length of time incapacitated from employment.

13. The position held and/or type of work performed by plaintiff.

14. Total amounts claimed as lost earnings, including a statement as to how such lost earnings were computed.

15. If plaintiff was a student, give the name and address of the school attended and the length of time incapacitated from attending said school.

16. A general statement of the acts or omissions constituting the negligence claimed of this defendant.

17. A statement of each and every statute or ordinance which it is claimed the defendant violated.

18. The specific exceptions under CPLR §1602 upon which plaintiff relies.

Dated:  New York, New York
        March 9, 2007

                              HARDIN, KUNDLA, MCKEON & POLETTO,
                              P.A.
                              Attorneys for Defendant, PIGTAINER,
                              INC., BERNARDIN GUTIERR BERNABE and
                              SALEM TRUCK LEASING, INC.
                              110 William Street
                              New York, New York 10038
                              (212) 571-0111

                    By:       _____
                              Stephen J. Donahue

TO:  Thomas J. Lavin, Esq.
     LAW OFFICES OF THOMAS J. LAVIN
     Attorney for Plaintiff, Melanie M. Colon

-2-

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

MARY E. REILLY, being duly sworn, deposes and says:

I am not a party to the action, am over eighteen years of age, and reside in Staten Island, New York . On March 9, 2007, I served the within **DEMAND FOR BILL OF PARTICULARS** on:

> Thomas J. Lavin, Esq.
> LAW OFFICES OF THOMAS J. LAVIN
> 2980 Bruckner Boulevard
> Bronx, New York 10465
> 718-829-7400
> Attorney for Plaintiff, Melanie M. Colon

the address designated by said party for that purpose, by depositing a true copy of same enclosed in a postpaid properly addressed wrapper, under the exclusive care and custody of the United States Postal Service.

_____
MARY E. REILLY

Sworn to before me this _____

day of _____ , 2007

_____
Notary Public

JOSHUA SELTZER
Notary Public, New York
No. 02SE6135922
Qualified in Kings County
Commission Expires _____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-------------------------------------------------------------------X
MELANIE M. COLON,                               **VERIFIED BILL**
                                                **OF PARTICULARS**
                Plaintiff(s),
                                                Index No.: 7519/07
        -against-

BERNARDIN GUTIERR BERNABE and
SALEM TRUCK LEASING, INC. and
PIGTAINER INC.,

                Defendant(s),
-------------------------------------------------------------------X

        Plaintiff, by her attorney, THE LAW OFFICE OF THOMAS J. LAVIN, responding to the

demands of defendant BERNARDIN GUTIERR BERNABE, SALEM TRUCK LEASING, INC.

and PIGTAINER INC for a Bill of Particulars, alleges, upon information and belief, as follows:

        1.      The occurrence took place on September 7, 2006 at approximately 04:50PM. The

occurrence took place at Cross Bronx Expressway service road at its intersection with Ellis Avenue,

County of Bronx, State of New York.

        2.      As a result of this occurrence, plaintiff sustained the following injuries:

                - Circumferential herniated disc at C4/5;

                - Central bulging disc at C5/6.

                - Focal left herniated disc at L4/5.

                - Focal left herniated disc at L5/S1.

                - Bilateral C6 sprain/strain.

                - Bilateral lumbar radiculopathy L5/S1.

                - Cervical neuritis; cervical radiculopathy; cervical myofascitis; straightening

of the normal cervical lordotic curvature; cervical sprain, strain spasm and/or stress; lumbosacral

radiculopathy; lumbosacral sprain, strain, spasm and/or stress; lumbago; lumbosacral myofascitis; lumbosacral neuritis; straightening of the normal lumbar lordotic curvature; tears, sprains, strains, spasm, stress, tenderness, derangement, dislocation, degeneration, scarring, swelling, chrondomalacia, bruising, impingement, contusions and/or abrasions of the ligaments, tendons, cartilage, muscles, nerves, tissues, with loss and/or limitations of use and/or range of motion of the spinal area; severe pain and/or arthritic conditions of the head, cervical spine, lumbar spine and/or sacral spine; serious and severe pain; all injuries were caused, created, precipitated, protracted and/or induced by the negligence and statutory violations of the defendants.

The above have resulted in pain, tenderness, weakness, discomfort, aching, restriction of motion, numbness, stiffness, arthritis, osteoarthritis, atrophy, insomnia, deformity, the possible need for future surgery, scarring, spasm, stiffness, impairment of function, inability to stand and/or ambulate; soft tissue injury, swelling, partial and permanent loss of use of the cervical, lumbar and sacral spine areas and, as a result, the entire body.  The plaintiff also was and is required to take medication, with other side effects.

In addition, this plaintiff was required to undergo painful and uncomfortable testing and treatment and therapy.  Upon information and belief, all of the above injuries and/or their residuals, except those of a superficial nature, are of a permanent nature.

3.     Plaintiff sustained serious injury as defined by Section 5102 of the Insurance Law of the State of New York including, but not limited to permanent loss of use of a body organ, member, function or system; permanent consequential limitation of a use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents plaintiff from performing substantially all of

- 2 -

the material acts which constitute plaintiff's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence.

4.      Plaintiff has sustained a loss in excess of the basic loss as defined by Section 5102 of the Insurance Law of the State of New York including, but not limited to, all necessary expenses incurred for medical, hospital, surgical, nursing, dental, ambulance, x-ray, prescription drug and prosthetic services; psychiatric, physical and occupational therapy and rehabilitation; any other professional health services; and all other reasonable and necessary expenses incurred.

5.      Upon information and belief, all injuries and their effects are permanent in nature.

6.      (a) The Plaintiff was totally disabled from the time of the accident until September 11, 2007.

(b) The Plaintiff is partially disabled through the present time.

7.      (a) The Plaintiff was confined to bed for approximately four days subsequent to this accident, excluding necessary excursions, and will continue to be intermittently confined hereafter.

(b) The Plaintiff was confined to home for approximately four days subsequent to this accident, excluding necessary excursions, and will continue to be intermittently confined hereafter.

(c) The Plaintiff was confined to Montefiore Medical Center/Einstein Division, 1825 Eastchester Road, Bronx, New York 10461 from September 7, 2006 - September 8, 2006.

8.      Please see 7(c), supra.

9.      Plaintiff is not presently claiming special damages, however Plaintiff reserves the right to claim special damages in the future. Plaintiff's medical bills have been covered under her no-fault insurance, which is Amica Insurance Company, P.O. Box 400, Brookfield, Connecticut

- 3 -

06804. The claim number assigned to her no-fault file is L082006040880. Please see enclosed no-fault authorization.

10.    Please see attached authorizations setting for the name and address of all medical providers and/or physicians with whom the Plaintiff has consulted with relative to this accident.

11.    Plaintiff is not claiming lost wages relative to this accident.

12.    Plaintiff is not claiming lost wages relative to this accident.

13.    Plaintiff is not claiming lost wages relative to this accident.

14.    Plaintiff is not claiming lost wages relative to this accident.

15.    Not applicable.

16.    The above stated occurrence and the results thereof were in no way due to any negligence on the part of the plaintiff contributing thereto, but were caused by the negligence of the defendants and/or said defendants' agents, servants, employees and/or licensees in the ownership, operation, management, maintenance and control of their said tractor trailer; in operating same without due regard to the rights and safety of the plaintiff; in failing to yield the right of way to the Plaintiff; in failing to obey the posted yield sign; in failing to apply their brakes; in failing to timely apply their brakes; in negligently accelerating when they should have applied their brakes; in operating their said motor vehicles in a manner which unreasonably endangered the plaintiff; in failing to properly steer, guide, manage and control their said tractor trailer; in operating same at a rate of speed greater than was reasonable and proper at the time and place of the occurrence; in failing to apply the brakes or slow down or stop in such a manner as would have prevented the occurrence; in failing to have made adequate and timely observation of and response to conditions; in failing to observe signs and signals prevailing at the time and place of the occurrence; in failing

- 4 -

to keep a proper look-out when controlling their said vehicles; in failing to properly maintain their said vehicles according to law; in failing to give adequate and timely signal, notice or warning; in operating their said motor vehicles in violation of the traffic rules, regulations, statutes and ordinances in such cases made and provided; and in being careless, reckless and negligent in the ownership, maintenance, operation and control of their said motor vehicles.

17.    Defendants violated sections of the New York State Vehicle and Traffic Law and the New York City Traffic Rules and Regulations concerning the safe and proper operation of a motor vehicle upon the public ways and streets of the State of New York including, but not limited to, Vehicle and Traffic Law Sections 365, 1101, 1110, 1128, 1140, 1142, 1172, 1180, and New York City Traffic Rules and Regulations Sections 4-02(c), 4-06 and 4-07(a).

18.    The accident falls within the motor vehicle exception of C.P.L.R. Section 1602.

Dated: Bronx, NY
March 28, 2007

Yours, etc.,

Thomas J. Lavin, Esq.
THE LAW OFFICE OF THOMAS J. LAVIN
Attorneys for Plaintiff
MELANIE COLON
2980 Bruckner Boulevard
Bronx, NY  10465
(718)829-7400

TO:    Hardin, Kundla, McKeon & Poletto, P.A.
Attorneys for Defendants
PIGTAINER INC., BERNARDIN
GUTIERR BERNABE &
SALEM TRUCK LEASING INC.
110 William Street
New York, New York 10038
(212) 571-0111

- 5 -