Page 1 of 7

# SALEM TRUCK LEASING, inc.

## TRUCK LEASE AND SERVICE AGREEMENT

THIS AGREEMENT is made as of the Sixth day of August, 1998, between SALEM TRUCK LEASING, INC., with an address at 9505 Avenue D, Brooklyn, New York 11236 ("Salem"), and BERARDINO BERNABE GUTIERREZ

Partnership  Corporation (State of Incorporation)  Proprietorship, with an address at 223 Hope Ave., Passaic, NJ. 07055

("Customer").

Navistar Financial Corporation possesses a security interest in the within lease and the rights to rentals thereunder.

**Paragraph (1)  PROPERTY COVERED**

Salem agrees to lease to Customer and Customer agrees to lease from Salem the equipment described on each Schedule A now or later executed by Salem and Customer. That equipment and all other equipment provided to Customer under this Agreement is referred to as the "Vehicle." Execution of a Schedule A by Customer is Customer's authorization to Salem to acquire the Vehicle listed on that Schedule A. This Agreement shall become effective for each Vehicle listed on Schedule A when the Schedule A for the Vehicle is executed by the parties. Acceptance of a Vehicle by Customer is an acknowledgement that the Vehicle complies with Customer's specifications. Customer agrees to pay for the cost, installation and maintenance of any alterations, pollution-related or safety-related equipment required by Customer or by a governmental agency after the date of the applicable Schedule A. A Vehicle provided by Salem to Customer for use during the period between the date a Schedule A is signed by Customer and Salem and the Date in Service of a Vehicle listed on Schedule A is an "interim" Vehicle. If Salem provides Customer with an interim Vehicle, it shall be subject to all the provisions of this Agreement, for the period of time while Salem provides it for Customer's use. A Vehicle provided by Salem to Customer which is neither listed on Schedule A, an interim Vehicle nor a substitute Vehicle (under Paragraph 7), is an "extra" Vehicle. If Salem provides Customer with an extra Vehicle, it shall be subject to all the provisions of this Agreement for the period of time while Salem provides it for Customer's use, except for the charges which shall be paid by Customer under Article 19. Salem shall have no obligation to do any special painting or lettering on, or furnish any special equipment for, an interim, extra or substitute Vehicle.

**Paragraph (2)  TERM**

The term of this Agreement for each Vehicle shall begin on the Date in Service shown on Schedule A and shall expire when the Term shown on Schedule A has elapsed. Customer authorizes Salem to insert the Date in Service, Unit Number, Model Year, and Serial Number of the Vehicle on Schedule A. The Date in Service shall be the date on which Salem notifies Customer that the Vehicle is available for Customer's use.

On the expiration of a Vehicle's term Customer shall return the Vehicle to Salem at the location designated by Salem in the same condition as on the Date in Service, reasonable wear and tear excepted, including removal of all grafitti at Customer's expense. Customer shall have no right and no obligation to buy a Vehicle for which the Term has expired. A Vehicle not returned on or prior to its expiration date shall continue to be subject to the terms and conditions of this Agreement and Customer agrees to return the Vehicle to Salem on written notice.

**Paragraph (3)  MAINTENANCE AND SERVICES**

A.  Salem agrees to provide:

1.  Oil, lubricants, tires, tubes, and all other operating supplies and accessories necessary for the proper operation of the Vehicle;
2.  Maintenance and repairs which may be required to keep the Vehicle in good operating condition and appearance; and,
3.  Initial lettering, according to Customer's specifications, in an amount not more than shown on Schedule A, Column 11.

B.  Customer agrees to return each Vehicle to Salem for service and maintenance at facilities designated by Salem for a minimum of eight (8) hours at intervals specified by Salem during Salem's normal business hours. Each time that a Vehicle is returned to Salem's facility, Customer's driver shall report in writing any adjustments or repairs needed on the Vehicle. Except as so reported, it shall be presumed that the Vehicle operated satisfactorily.

C.  Customer agrees not to cause or permit any party other than Salem or parties expressly authorized by Salem to make repairs or adjustments to the Vehicle. When repairs are necessary, Customer shall notify Salem by the speediest means of communication available. Salem will not be responsible for any repair or service while the Vehicle is away from Salem's facility, unless expressly authorized by Salem.

D.  If Salem authorizes repairs or adjustments under subParagraph C above, Customer shall, within thirty (30) days from the date of purchase by Customer of any item for which it seeks reimbursement, furnish to Salem substantiation of the purchase by a dated original receipt showing cost, Unit Number, date of purchase, hubodometer reading at time of purchase and Customer's driver's signature.

E.  Salem shall wash each vehicle once a month at 8 Hackensack Ave., South Kearny, NJ.

Paragraph (4)  **FUEL**

   A. The party designated on Schedule A agrees to provide fuel for the Vehicle.

   B. The party designated on Schedule A agrees to secure and pay for fuel bonds and/or fuel tax permits for the Vehicle. If Salem is designated, Salem will, where permitted by law, post fuel bonds and/or secure and pay for fuel tax permits in those states designated by Customer as of the date of Schedule A. Customer agrees to pay the cost of all licenses, fuel permits and fuel bonds in excess of the amount shown on Schedule A.

   C. The party designated on Schedule A agrees to provide fuel tax reporting for the Vehicle:

   1. If Salem is designated:

   a. Salem will prepare and file the fuel tax returns and pay the taxes imposed on the purchase and consumption of fuel, provided Customer provides Salem weekly with all trip reports, original fuel tickets or invoices, and other documents relating to the use of the Vehicle which may be necessary for the preparation of fuel tax returns.

   b. Customer shall reimburse Salem for all fuel taxes paid by Salem in excess of the fuel taxes which would have been payable with respect to the fuel used by customer, had such fuel been purchased in the state of consumption.

   2. If Customer is designated, Customer will indemnify and defend Salem from any liability, real or asserted, arising from improper or untimely fuel tax reporting.

Paragraph (5)  **LICENSES**

   A. The party designated on Schedule A will secure and pay for base motor Vehicle registration for the state designated on Schedule A. Any additional state or proration registration or tags that may be needed will be at Customer's expense. If Salem is designated, each Vehicle shall, if possible, be licensed in Salem's name in the appropriate states. Increases in the cost of licenses shall be paid by Customer under Paragraph 4B.

   B. Salem agrees to file Federal Highway Use Tax ("FHUT") returns and to pay FHUT up to the amount shown on Schedule A. Increases in the cost of FHUT shall be paid by Customer.

   C. Customer agrees to pay for any license or pay any taxes, including but not limited to, mileage taxes, ton mileage taxes and highway or bridge tolls, resulting from the use of the Vehicle except those expressly assumed by Salem. Salem shall have the right to pay or discharge any lien or encumbrance asserted against the Vehicle as a result of Customer's failure to pay any claim or assessment for any such taxes. Customer shall promptly reimburse Salem for such payment. Customer agrees to pay any expenses Salem may incur as a result of a change in Customer's operation of the Vehicle or a change in the area of Customer's operation.

Paragraph (6)  **TRIP REPORTS**

   Customer agrees to provide Salem each week with timely and complete trip reports ~~showing mileage run in each state~~ (Mileage). Customer shall be liable for each assessment, penalty, loss of credit or mileage adjustment due to negative audit findings. ~~where not timely and complete reports are provided to Salem. In addition, Customer agrees to pay Salem a service charge of five (5) cents per mile for each mile run for which a trip report has not been properly provided to Salem.~~

Paragraph (7)  **SUBSTITUTION**

   A. Salem agrees to furnish Customer, if a similar type is reasonably available from Salem, a substitute Vehicle for any Vehicle temporarily inoperable due to mechanical failure, except as provided below. The substitute Vehicle shall be furnished at no additional charge and shall be subject to all the terms and conditions of this Agreement. Salem shall have no obligation to furnish a substitute Vehicle if the Vehicle is out of service: (1) ~~for ordinary maintenance~~; (2) because of damage resulting from collision, upset, theft or abusive handling; (3) for repair or maintenance of any truck body, trailer or other equipment or accessories which Salem has not agreed in writing to maintain; or (4) as a result of damage to a Vehicle caused by failure of equipment not supplied by Salem.

   If Salem fails to supply a substitute Vehicle when it is regarded to do so, and such failure extends for more than twenty-four (24) hours (weekends and holidays excepted), the charges for the Vehicle for which Salem is obligated to provide a substitute shall abate until Salem either returns the Vehicle or furnishes a substitute. There shall be no other liability whatsoever on the part of Salem for loss of business or any other damage to Customer for the failure to supply a substitute Vehicle other than the abatement described in the preceding sentence. Customer agrees, on notice from Salem, to return a substitute Vehicle promptly to Salem's service facility from which that Vehicle was furnished. Customer agrees to pay Salem's rental rates as covered in Article 21 for any substitute Vehicle not returned within forty-eight (48) hours of notice.

   B. If a Vehicle is worn or expended to such an extent that, in Salem's reasonable opinion, complete repair, restoration or maintenance would be excessively expensive, Customer agrees that Salem may, at its option and upon sixty (60) days prior written notice, replace that Vehicle with another Vehicle with a similar carrying capacity and value for the balance of the original Vehicle's term. The date of replacement shall serve as the expiration of the term for the original Vehicle replaced. The replacement Vehicle shall be subject to all the provisions of the Agreement.

Paragraph (8)  **DRIVERS AND VEHICLE CARE**

   Customer agrees that the Vehicle shall be operated only by its employees or agents who will be careful, properly licensed and legally qualified drivers and at least twenty-one (21) years of age. Customer's drivers shall be paid by and subject to Customer's exclusive direction and control. Customer shall require its drivers to operate the Vehicle with reasonable care and to use every reasonable precaution to prevent any loss or damage. Customer agrees that no passengers will be carried in any Vehicle except for duly authorized agents of Customer. If Salem reasonably

determines that any loss or damage occurred or is likely to occur because of careless, reckless, intentional or abusive conduct by any driver, Salem shall notify Customer and Customer shall not permit such driver to operate the Vehicle unless Customer is prevented from doing so by a written agreement. Customer agrees to pay for any loss or damage which results from careless, reckless, intentional or abusive conduct by any driver. Customer agrees to provide Salem with official driving records of Customer's drivers.

Paragraph (9) **USE AND OPERATION**

    A. Customer agrees that the Vehicle will be used by Customer only in the ordinary course of Customer's business, and in compliance with every applicable law, rule and regulation. Customer represents that the Vehicle will not be used for personal, family or household purposes.

    B. Customer shall be responsible for repair and replacement of all tools, tarps, spare tires, accessories and safety equipment provided by Salem for use with the Vehicle. Customer shall be responsible for any damage to the Vehicle by failing to maintain proper fluid levels, driving the Vehicle with a flat tire, and modifying or tampering with the engine or any other portion of the Vehicle. Customer agrees to pay for damage to tires not caused by ordinary wear and tear.

    C. Customer agrees to do the following during freezing weather: if the Vehicle is equipped with an engine heater, to provide and use a properly operating electrical outlet for the heater. Customer shall pay the expenses incurred by Salem for failure to comply as provided for herein.

Paragraph (10) **CHARGES**

    A. Salem will invoice Customer each month in advance for the Rate Per Month, and for all other charges due under this Agreement including applicable taxes. Customer agrees to pay each invoice, without offset, within ~~seven (7)~~ TEN days of the date of the invoice. Each invoice shall be deemed correct unless Customer shall, in writing, protest it within ~~X~~ TEN days of its date. Customer agrees to pay a service charge on invoices not paid within ~~thirty (7)~~ TEN days. The service charge shall be the lower of 1½% per ~~month (18%~~ 14% per year) or the highest lawful rate of interest, *if 14% is not allowed*.

    B. Customer shall supply Salem each month with the mileage traveled from hubodometer and odometer readings. If the hubodometer or odometer fails to function, the mileage for the period may be determined on the basis of mileage traveled for the previous thirty (30) days. Hubodometer and odometer malfunctions shall be promptly reported to Salem.

10A) Cont. Service Charges Will Only Apply To Proper Charges.

Paragraph (11) **ADJUSTMENT OF CHARGES**

    The parties recognize that the charges shown on Schedule A are based on Salem's current costs of labor, parts, supplies and other items. The parties agree that the charges shall be adjusted in accordance with increases and decreases in the Consumer Price Index for All Urban Consumers (CPI-U), using a 1967 base period, published by the U.S. Department of Labor, Bureau of Labor Statistics for N.Y., N.Y.-Northeastern N.J. For each rise or fall of 1% in the CPI-U, the Fixed Rental Charge Per Month, Rate Per Hour and the Mileage Rates written on Schedule A shall be increased or decreased by ~~1%~~ ½%.

    Upon adjustment, the Fixed Rental Charge Per Month shall be rounded to the nearest whole cent, and the Rate Per Hour and Mileage Rate Per Mile shall be rounded to the nearest one-tenth cent. (12)

    The first adjustment shall be effective with the next invoice ~~six (6)~~ months after the Date in Service. The remaining adjustments shall be effective at ~~six (6)~~ month intervals after the first adjustment. Each adjustment shall be based on the difference between the most recently published CPI-U written on Schedule A. (12)

    If the CPI-U is discontinued, Salem and Customer will select a reasonable comparable alternative for the adjustment of charges. (C.P.I. Increase Will Be Limited To 4% Annually)

Paragraph (12) **INSURANCE**

    A. Liability Insurance Responsibility

1. Standard policy of automobile liability insurance (hereafter Liability Insurance) with limits specified on each Schedule A shall be furnished and maintained by the party designated on Schedule A at its sole cost, written by a company satisfactory to Salem covering both Salem and Customer as Insureds for the ownership, maintenance, use or operation of the Vehicles and any Vehicle being provided as a substitute and extra therefor. Such policy shall provide that coverage afforded cannot be cancelled or materially altered without thirty (30) days prior written notice to both parties. The party designated shall furnish to the other party certificates to evidence compliance with this provision.

2. If Salem is procuring Liability Insurance, upon not less than sixty (60) days prior written notice to Customer, Salem shall have the right to terminate Liability Insurance coverage maintained by Salem and Customer shall be obligated to procure and maintain Liability Insurance in the limits set forth on Schedule A as of the effective date of termination and the charges will be adjusted accordingly.

3. If Customer is obligated to procure and maintain Liability Insurance and fails to do so, or fails to furnish Salem the required evidence of Insurance, Customer shall indemnify and hold Salem harmless from and against any claims or causes of action for death or injury to persons, or loss of damage to property and Salem shall be authorized but not obligated to procure such Liability Insurance, without prejudice to any other remedy Salem may have, and Customer shall pay Salem, as additional rental, the amount of the premium paid by Salem. The failure to maintain Liability Insurance when the Customer is obligated to procure such insurance, or the failure to furnish Salem the required evidence of insurance shall constitute a default under this agreement and Salem shall have the right to terminate the agreement and enforce the remedies contained herein.

4. Customer agrees to release, indemnify, and hold Salem harmless from and against any claims or causes of action for death or injury to persons, or loss or damage to property in excess of the limits of Liability Insurance or to the extent not covered whether provided by Salem or Customer, as indicated on Schedules A, arising out of or caused by the ownership, maintenance, use or operation of any Vehicle leased or furnished hereunder, and any such claims or causes of action which Salem shall be required to pay as a result of any statutory requirements of insurance and which Salem would not otherwise, pursuant to the terms hereof, be required to pay.

5. Salem will, where required and permitted by law, upon request of Customer, file State and/or Interstate Commerce Commission Certificates of Automobile Liability Insurance covering the Vehicles. Customer agrees to indemnify, defend, and save Salem harmless from all claims, causes of action, suits and damages arising out of filing such documents for Vehicles other than leased Vehicles.

6. Customer further agrees to release and hold Salem harmless for death or injury or property damage to Customer, Customer's employees, drivers, passengers or agents, arising out of the ownership, maintenance, use or operation of any Vehicle leased or furnished hereunder.

B. **Physical Damage Responsibility**

1. In the event Salem is designated:

a. Salem will pay for loss or damage to each Vehicle in excess of the amounts specified on Schedules A EXCEPT (i) collision with an overhead object; (ii) any willful damage to the Vehicle arising out of or in connection with any labor dispute; (iii) conversion of any Vehicle by an agent or employee of Customer which shall not be considered theft within the terms of this provision; (iv) the loss by theft of tools, tarpaulins, accessories, spare tires and other such appurtances. Customer shall pay up to the amount specified on Schedule A as deductible, for loss or damage to any Vehicle, including related expenses, from each occurrence and shall pay for all loss or damage to any Vehicle resulting from any perils specifically not assumed by Salem herein.

b. Upon not less than sixty (60) days prior written notice to Customer, Salem shall have the right (i) to terminate any Physical Damage coverage procured or maintained by Salem and (ii) to increase Customer's Physical Damage Responsibility to an amount with respect to each Vehicle equal to the agreed value of such Vehicle computed in accordance with Paragraph 15 as of the time of damage or loss, and each of the charges specified on Schedule A shall be decreased accordingly.

c. In the event Salem terminates Physical Damage coverage, Customer shall be obligated to procure and maintain Physical Damage coverage acceptable to Salem and each of the charges shall be adjusted accordingly. Customer agrees to furnish Salem certificates necessary to evidence compliance with this Paragraph.

d. If Customer is obligated to procure and maintain Physical Damage coverage and fails to do so, or fails to timely furnish Salem with evidence of such coverage, Customer agrees to reimburse Salem all its loss, cost and expense resulting from loss of or damage to the Vehicles or any Vehicle being used as a substitute and extra therefor. The failure of the Customer to procure and maintain Physical Damage coverage or the failure to timely furnish Salem with evidence of such coverage shall constitute a default under this agreement pursuant to Paragraph 14 hereof.

2. In the event Customer is so designated:

a. Customer will pay for all loss or damage to any Vehicle or any Vehicle being used as a substitute and extra therefor, including related expenses including towing arising from any cause, but Customer's liability shall not exceed the purchase price of the damaged Vehicle computed according to the provisions of Paragraph 15 at the time of such loss or damage.

b. Customer further agrees to furnish Salem with a policy of insurance acceptable to Salem with Salem as a named insured or endorsed as a loss payee having a deductible amount not to exceed the amount specified on Schedule A, failing in which, Salem may obtain such insurance and add the cost thereof prorata to the charges for the Vehicles. Failure of the Customer to comply with any of the provisions contained herein shall constitute a default pursuant to Paragraph 14 hereof.

C. **Notice of Accident**

Customer agrees to notify Salem immediately upon the happening of any accident or collision involving the use of a Vehicle by the speediest means of communication available and to cause the driver to make a detailed report in person at Salem's office as soon as practicable, and to properly render all other assistance to Salem and the insurer that is requested by either of them in investigation, defense or prosecution of any claims or suits. In the event Customer fails to cooperate, the Customer shall be responsible for all damages to person and property or persons and entities involved in the accident and shall indemnify and hold Salem harmless from liability for such loss or damage. Additionally, if the Customer fails to cooperate, such shall constitute a default pursuant to Paragraph 14 hereof.

D. **Cargo Insurance**

Customer agrees to release and hold Salem harmless from liability for loss or damage to any goods or other property in or carried on any Vehicle whether such loss or damage occurs in Salem's facility or elsewhere. Customer shall, at its sole expense, include Salem as a named insured in any and all cargo or transportation or floater insurance policies covering Customer with respect to any loss or damage to such goods or property. Customer waives any legal right right of recovery against Salem for any such loss or damage. Customer shall reimburse Salem for loss of any tools, tarpaulins, accessories, spare tires or other equipment furnished by Salem.

E. Vehicle Theft or Destruction

Page 5 of 7

If a Vehicle is lost or stolen and remains so for thirty (30) days after Salem has been notified, the lease as to such Vehicle shall then terminate provided all charges for such Vehicle have been paid to that date and provided any amounts due Salem pursuant to Paragraph 12B have been paid. Salem shall not be obligated to provide a substitute Vehicle during said thirty (30) day period. If a Vehicle is, in Salem's opinion, damaged beyond repair, Salem shall notify Customer within thirty (30) days after Salem has been advised of the loss. Upon receipt of Salem's notice that the Vehicle has been damaged beyond repair, provided all charges for such Vehicle have been paid to that date and provided any amounts due Salem pursuant to Paragraph 12B hereof have been paid, the lease as to such Vehicle shall then terminate.

Paragraph (13) **EARLY TERMINATION**

[text struck through and illegible]

Paragraph (14) **DEFAULT**

A. Each of the following shall constitute a default pursuant to Paragraph 14 of this agreement notwithstanding any language to the contrary contained herein:
1. If Customer fails to pay charges when due; (Material Obligations)
2. If Customer fails or refuses to perform any of its obligations under this Agreement;
3. If Customer becomes insolvent, voluntarily liquidates, files a voluntary petition in bankruptcy, makes an assignment for the benefit of creditors, is adjudicated bankrupt by a court of competent jurisdiction, permits a receiver to be appointed for its business, or permits or suffers a material disposition of its assets; or,
4. If any representation by Customer or its guarantor made in connection with this Agreement proves to be incorrect in any material respect.

If Customer Is In Default Under Paragraph 14(C) Salem May

B. [struck through text], discontinue all services to Customer and take possession of the Vehicle and Salem is expressly authorized to enter any location where the Vehicle may be and remove, retain and refuse to redeliver the Vehicle to Customer until the Default is cured. Such action by Salem shall not constitute a termination of this Agreement. All charges under this Agreement shall continue until the Agreement is terminated or expires. [struck through text].

C. If Customer's Default continues for (10) days after written notice has been given to Customer, Salem may (in addition to its other remedies) terminate this agreement. Upon termination, Customer shall, at Salem's option, do one or more of the following:

1. (a) Purchase within ten (10) days the Vehicle terminated for the Purchase Price described in Paragraph 15; or, (b) Pay Salem within ten (10) days for the difference between the Purchase Price described in Paragraph 15 and the wholesale fair market value of the Vehicle as determined by an independent appraiser selected by Salem; and,
2. Pay all charges through the date of purchase or payment under Subparagraph 1 above; and,
3. Pay, as liquidated damages, an amount equal to the Rate Per Month (or the Rate Per Mile if the Vehicle is subject to the Guaranteed Mileage provision) for the period from the termination date through the next date on which Customer could terminate the Agreement under Paragraph 13, less Depreciation Per Month for the same time period. In determining said liquidated damages the parties have made due allowance for Salem's investment in buying and/or reconditioning the leased Vehicle(s), the uncertainty of leasing them to others, cost to Salem for the period during which they remain idle or if sold, the uncertainty of the sales price and Salem's loss in selling said Vehicle(s), commissions, and legal expense to be paid, etc. Due allowance has also been made for the savings in not furnishing gas, oil, and the other services.

D. Salem's remedies under this Paragraph 14 are cumulative. Pursuit of any one remedy by Salem under this provision is without prejudice to Salem's other remedies and does not constitute an election of remedies. Salem may exercise any remedy provided under this Agreement, at law or in equity. Failure by Salem to pursue any remedy because of a Default is not a waiver of the Default. The acceptance of payments by Salem shall not be deemed a waiver of the Default unless Salem expressly agrees to waive the Default in writing. If payments due under this agreement are not made at the time required, Salem may exercise any of its remedies afforded by this Agreement or by law.

E. [struck through text]

Paragraph (15) **PURCHASE PRICE** (This Paragraph Has Been Deleted In Its Entirety)

A. [struck through text]
1. [struck through text]

** (THIS IS THE LAST SENTENCE OF PARAGRAPH 14B)
The Prevailing Party Shall Be held Harmless From All Costs And Expenses including attorneys fees incurred as a result of any alleged breach of this

12. ~~Any xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~

13. ~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~

14. ~~Salem shall xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~

Paragraph (16) **INDEMNITY**

Customer releases and agrees to indemnify, defend and hold Salem harmless from any liability for losses resulting to Customer by reason of delay in delivery or failure to deliver products by Customer.

Paragraph (17) **LEASE ONLY - PRODUCT LIABILITY**

This is a contract of leasing only. Notwithstanding its possession and use of a Vehicle, Customer shall acquire no ownership interest in or title to a Vehicle unless expressly provided for by the terms of this Agreement. Customer agrees that Salem is not the manufacturer or designer of the Vehicle. SALEM MAKES NO WARRANTIES EITHER EXPRESSED OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR USE INTENDED, OR OF ANY KIND OR CHARACTER NOT EXPRESSLY STATED IN THIS AGREEMENT. SALEM SHALL NOT BE RESPONSIBLE FOR ANY LIABILITY, REAL OR ASSERTED, ATTRIBUTABLE TO ANY DEFECT OR DEFICIENCY IN A VEHICLE, ARISING OUT OF ITS MANUFACTURE OR DESIGN.

Paragraph (18) **FORCE MAJEURE**

Salem shall incur no liability to Customer for failure to deliver, supply or repair a Vehicle or provide fuel for a Vehicle if prevented by a national emergency, war, riot, fire, labor dispute, Federal, State or local law, rule, regulation, shortage (local or national), or allocation program, delay in production or delivery by any manufacturer, or any other cause beyond Salem's reasonable control. If a Vehicle is out of service due to a circumstance listed above for a period longer than thirty (30) consecutive days then the charges for each week for the rest of the period of interruption shall be reduced to the total of twice the Depreciation Per Week and the prorated part of Salem's fixed costs for items such as permits, bonds, taxes and licenses. It is understood that Salem may have to order the Vehicle. The Vehicle shall be made available for Customer as soon as practical after Salem receives it from the manufacturer, but Salem shall not be responsible for delay in delivery. If Customer fails to take delivery within ten (10) days after Salem notifies Customer the Vehicle is ready, Salem may exercise its Default remedies.

Paragraph (19) **EXTRA VEHICLES**

Upon Customer's request for extra Vehicles, Salem will, so long as it has the same available, supply to Customer extra Vehicles for temporary use for such a period and of such type as shall have been mutually agreed upon. Such extra Vehicles will be supplied to Customer upon the same terms, conditions and limitations as are in this Agreement contained, except that the daily rental charge to be paid by Customer to Salem for the use of any additional Vehicle shall be the then current lease rate plus 15% for similar Vehicles. Dissimilar Vehicles shall be at the prevailing rental rate less 10%. The daily rental rates shall be computed at one-fifth of the weekly rate for similar Vehicles.

Paragraph (20) **ASSIGNMENT**

The terms and conditions of the Agreement shall bind and inure to the benefit of the legal representatives, successors and assigns of the parties, but Customer shall have no right of assignment or subletting without the prior written consent of Salem. If Salem assigns its rights to sums due under this Agreement, Customer shall look only to Salem for performance of the obligations under this Agreement and to to any such assignee. Customer shall assert no claims against the amounts due to the assignee. Each Vehicle will be subject to any rights and interest in and to that Vehicle under any installment sales instrument, mortgage or security agreement which a financing source may hold.

This Agreement is for the benefit of the parties and, except for the rights of any assignee of Salem, no other entity shall have any rights under this Agreement.

Paragraph (21) **FINANCIAL STATEMENTS**

~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~

Paragraph (22) **MISCELLANEOUS**

A. Agreement and Schedules — This Agreement and the Schedules which are executed now or at any later date contain and merge all agreements, representations and understandings of the parties. All Schedules executed now or at a later date are a part of this Agreement and are incorporated by reference.

B. Headings — The headings and location of provisions are for convenience only.

C. Customer — Wherever "Customer" is used, it shall include all of Customer's drivers, servants and agents, whether or not they are considered for other purposes to be affiliated with Customer. Wherever the singular is used in this Agreement, it shall include the plural, and vice-versa as the context may require.

D. Invalidity — If any provision of this Agreement, or the application of any provision to any person or circumstance, is held invalid or unenforceable, the remainder of this Agreement, and the application to other persons or circumstances, shall remain valid and enforceable.

E. Execution — This Agreement shall not be binding upon Salem until the Agreement and all applicable Schedules are executed at Salem's corporate office in Brooklyn, New York by the President or a Vice-President of Salem. No amendment or supplement to this Agreement shall be binding or effective until it is in the form of a written agreement signed by Customer and by the President or a Vice-President of Salem in Brooklyn, New York.

F. Notices — All notices under this Agreement shall be in writing and shall be deemed given when mailed by certified or registered mail with return receipt requested or delivered in person to Salem or Customer at the address shown on page 1, or at another address as may be designated in writing by either party. If a Notice is delivered in person, a copy of the notice shall also be mailed as provided in this Subparagraph F.

G. New York — This agreement shall be interpreted and enforced under the laws of New York without giving effect to its conflicts of law provisions. The parties submit to the jurisdiction of the Courts of the State of New York and the City of New York and all actions arising out of or in any way connected to this agreement shall be brought in the Courts of the State of New York and the City of New York.

H. ~~Security — Customer has deposited with Salem Truck Leasing, Inc. the sum set forth in~~ Schedule "A" as security for the full and faithful performances by Customer of all terms, covenants and agreements required to be performed by Customer ~~under~~ this Agreement. Such sum shall be returned to Customer upon termination of this agreement provided Customer has so performed as herein set forth. Salem shall be subject to no restrictions or limitations whatsoever with respect to ~~such funds, nor shall Salem be obligated to pay or accrue any interest thereon.~~

I. It is hereby agreed that the rights of the lessee are subject and subordinate to any lien given by lessor to secure the purchase price of the vehicle(s) leased hereby. Assignment of this lease shall not release lessee from any of his obligations thereunder, and assignee shall be entitled to all rights of lessor, free from any defense, set-off or counterclaim by lessee.

The parties have signed this Agreement as of the date shown on page 1. Each person who signs below warrants that he or she is duly authorized to sign on behalf of that party.

CUSTOMER __BERNARDINO BERNABE GUTIERREZ__     SALEM TRUCK LEASING, INC.
Signature: _[signature]_                      Signature: _[signature]_
Name: _____                    Name: __Alan Steinberg__
        (Typed or Printed)                            (Typed or Printed)
                                                      Sec.
Title: _____                   Title: _____
Date: _____                    Date: _____
Witness: _____                   Witness: _____

Responsibility: ____ Salem/Customer _X_ Bodily Injury      $_____ per accident
   (if Salem $ _____ cost per month)   Property Damage  $_____ per accident
                            OR Combined Single Limits  $_1Million_ per accident
                                   Liability Deductible  $_-0-_____ per accident

2. Physical Damage Responsibility by:         _X_ Salem $ 2500.00  deductible
                                              ____ Customer $_____ deductible

   (If Salem $ _150.00_ cost per month)

3. Insurance provided by _X_ Salem/Customer _____ for additional vehicles.
4. Fuel provided by _____ Salem/Customer _X_.
   Salem's fuel cost, shall be developed by Salem in accordance with standard cost accounting practices, reported and billed to Customer.
5. Domicile of the Vehicles listed on this Schedule (City) South Kearny, NJ.
   Storage By: _____ Salem/Customer _X_
6. Service and maintenance location of Vehicles listed on this Schedule North Arlington, NJ. OH
7. Vehicle(s) will only be operated in the following states: NY. NJ. Conn. PA. VT. RI. NH. Mass Del.
   Fuel Permits _____  Mary. Wash.DC. NC. SC. VA. W.VA. Georgia
   Provided By: Salem _X_ Customer _____ At Expense of: Salem _____ Customer _X_
   Fuel Tax Reports to be filed by Salem _____ Customer _X_
8. Additional information concerning present costs: 550.00
   (i)   Federal Highway Use Tax          $ _____      _X_ Salem/Customer _____
   (ii)  Base Plate/Registration          $ 1150.00         _X_ Salem/Customer _____
         (State of New Jersey)
   (iii) Fuel Permits and Fuel Bonds      $ _____      _____ Salem/Customer _____
9. Additional Services: _____
10. Security Deposit $ _____
11. Mileage guarantee: Customer guarantees that each of the vehicles described on this Schedule A will be operated a minimum of ___N/A___ miles within each ___-___ month period during which it is under lease ("Guarantee Period").

The payment of the Mileage Rate per Mile shall be made as provided in Paragraph 9 of the Agreement for miles actually operated.

A settlement of the mileage guarantee will be made at the end of each guarantee period as follows: If miles actually operated during the period are less than the miles guaranteed, then Customer will be billed by Salem and Customer shall promptly pay to Salem an amount equal to the difference between the number of miles guaranteed and the number of miles operated during the period, multiplied by the Current Mileage Rate per Mile.

If the lease of any vehicle is terminated during any guarantee period, the guarantee shall be prorated for that vehicle on the basis of the actual portion of such period it was under lease.

This Schedule A dated ___8-6-98_____ is hereby made a part of that certain Truck Lease And Service Agreement dated _August 6th, 1998_____ between the parties hereto.

CUSTOMER: BERNARDINO BERNABE GUTIERREZ           SALEM TRUCK LEASING, INC.
Signature: _/s/_____           Signature: _/s/_____
Name: _____            Name: Alan Steinberg
       (Typed or Printed)                               (Typed or Printed)

Title: _____           Title: Sec.

Date: _____            Date: _____

Witness: _____           Witness: _____

03/13/2007 TUE 08:47 [TX/RX NO 6266] ☒010

~~It is agreed that the Original Value (9) Monthly Depreciation (10) and Fixed Charges per month (13) are based upon manufacturer's quoted price for Vehicles as of the date of execution by Customer of this Schedule A. In the event manufacturer's quoted price for such Vehicle is increased prior to the Date of Delivery (2), the Vehicles Customer agrees that for such increases upon execution thereof the extension shall be increased accordingly.~~

| ~~Original Value (9)~~ | ~~Monthly Depreciation (10)~~ | ~~Fixed Charge Per Month (13)~~ |
|---|---|---|
| ~~$90.00~~ | ~~$.00~~ | ~~$x.80~~ |

~~The Rate Per Month shown on this Schedule A is based upon the interest rate at the Commercial Bank New York Prime Rate XXXXXX as of the date hereof plus XX percent per annum. In the event the Rate shall thereafter be increased or decreased, the rate per month shall XXXXXXX outlined to X% of charge in the Rate of interest Base.~~

The amounts in columns 9, 10 and 13 of this Schedule A will be adjusted on Date of Delivery.

1.  Liability Insurance        Limits:    Bodily Injury    $_____ per person

TOTAL P.009